UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DARLENE DERENGOWSKI,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant. | No. 15 C 7914<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Darlene Derengowski brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security denying Derengowski's claim for supplemental security income and disability insurance benefits based on a number of alleged disabilities. Derengowski seeks an award of benefits, or in the alternative remand to the Commissioner. For the following reasons, the Commissioner's decision is reversed and remanded for further proceedings consistent with this opinion and order.

**Legal Standard**

Judicial review of a final decision of the Social Security Administration is generally deferential. The Social Security Act requires the court to sustain the administrative law judge's ("ALJ") findings if they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court should review the entire administrative record, but must "not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the [ALJ]." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). "However, this does not mean that [the court] will simply rubber-stamp the [ALJ's] decision without a critical review of the evidence." *Id.* A decision may be reversed if the ALJ's findings "are not supported by substantial evidence or if the ALJ applied an erroneous legal standard." *Id.* In addition, the court will reverse if the ALJ does not "explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). "Although a written evaluation of each piece of evidence or testimony is not required, neither may the ALJ select and discuss only that evidence that favors his ultimate conclusion." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *see Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence."). Additionally, the ALJ "has a duty to fully develop the record before drawing any conclusions," *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007), and deference in review is "lessened . . . where the ALJ's findings rest on an error of fact or logic." *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). In oft-quoted words, the Seventh Circuit has said that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. When the ALJ has satisfied these requirements, the responsibility for deciding whether the claimant is

disabled falls on the Social Security Administration, and, if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the ALJ's decision must be affirmed. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).

## Analysis

In order to determine whether an individual is disabled, an ALJ must follow the five-step analysis provided by 20 C.F.R. § 404.1520(a)(4). At *step one*, if the ALJ determines that the claimant is "doing substantial gainful activity," then the claimant is not disabled and no further analysis is necessary. If the claimant is not engaged in gainful activity, at *step two*, the ALJ must determine whether the claimant has a "severe" impairment or combination of impairments. If the ALJ finds that the claimant has such a severe impairment, and the impairment is one provided for in the Social Security regulation listings, then at *step three*, the ALJ must find that the claimant is disabled. If the ALJ finds that the impairment is not in the listings, then at *step four*, the ALJ must assess the "residual functional capacity" ("RFC") the claimant continues to possess despite the claimant's impairment. If the claimant's RFC enables the claimant to continue his or her "past relevant work," then the ALJ must find that the claimant is not disabled. But if the claimant cannot perform past relevant work, at *step five*, the ALJ must determine whether the claimant "can make an adjustment to other work." If the claimant cannot make such an adjustment, then the claimant is disabled.

Here, the ALJ found that Derengowski has not engaged in substantial gainful activity since September 1, 2010 (step one), and has the following severe

impairments: pancreatitis; diabetes; neuropathy; arthritis; cirrhosis; alcohol dependence; depression and anxiety (step two). R. 6-3 at 19. Derengowski does not dispute these findings, or the ALJ's finding that Derengowski "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" (step three). *Id.* Rather, Derengowski challenges the ALJ's finding that she is not disabled because she "has the residual functional capacity ["RFC"] to perform light work," with certain limitations (step four), which would enable her to adjust to other work that is available in the national economy (step five). *Id.* at 27. Derengowski contends that the ALJ's RFC determination "is not supported by substantial evidence" for two reasons: (1) the ALJ erroneously analyzed the testimony of the two medical experts retained by the Commissioner who testified at the hearing—Dr. Carl Leigh, M.D., and Dr. Ellen Rozenfeld, Psy. D.; and (2) the ALJ erroneously found that Derengowski's testimony regarding her symptoms was "not entirely credible." *See* R. 9 at 1. Derengowski argues that the experts' testimony and her own testimony demonstrate that her RFC is for "sedentary work." Derengowski argues further that a finding that her RFC is for "sedentary work" would compel a finding that she is disabled pursuant to 20 C.F.R. Pt. 404, Subpt. P, App'x 2, Rule 201.09.

I. **Opinion Evidence**

    A. **Dr. Carl Leigh, M.D.**

Dr. Carl Leigh, M.D., testified as a medical expert at Derengowski's hearing. Dr. Leigh's testimony consisted of a review of the records of the three consultative

4

medical examinations of Derengowski performed by doctors retained by the Commissioner over the course of the three-year application process leading up to the hearing. Dr. Leigh testified that a comparison of the three examination reports demonstrated that Derengowski's condition had deteriorated over that time period.

Dr. Leigh noted that the third examination report—prepared by Dr. Roopa Karri, M.D.—included an opinion regarding the activities in which Derengowski was able to engage, which is an analysis relevant to the ALJ's RFC determination. Dr. Leigh testified that he disagreed with Dr. Karri's opinion of Derengowski's abilities, because it was

> very restrictive and the medical evidence of record does not support all those restrictions. For example, the examiner indicated [Derengowski] could climb ramps or stairs occasionally, but she could never stoop or bend, could never kneel, could never crouch, could never crawl. If she were unable to bend or stoop, she wouldn't be able to sit as she has been for the past hour here in the room.

R. 6-3 at 80.

The ALJ interpreted Dr. Leigh's testimony to indicate that Derengowski could perform "light work" prior to March 11, 2013, but only "sedentary work" from that date forward. R. 6-3 at 32. The ALJ, however, ultimately rejected the recommendation of "sedentary work" he attributed to Dr. Leigh, and instead found that Derengowski's RFC was for "light work."[1] The ALJ justified this rejection of Dr. Leigh's opinion with the following reasoning:

---

[1] The ALJ described his discount of Dr. Leigh's testimony both as "only given limited weight," and "given some weight." R. 6-3 at 32.

5

> However, as was noted above, the three [consultative examinations] showed progression of [Derengowski's] peripheral neuropathy and justified a reduction in the walking and standing requirements normally associated with light work, but other clinical findings regarding [Derengowski's] lower extremity, such as full range of motion in the hips, knees and ankles and the lack of a need for an assistive device, suggest a somewhat greater capacity to walk and stand, similar to as opined by examining physician Dr. Karri.

R. 6-3 at 32. Although this reasoning is not entirely clear, it is apparent that the ALJ thought that Dr. Karri's report served to discount Dr. Leigh's testimony. This is a peculiar analysis in light Dr. Leigh's testimony that Dr. Karri's RFC opinion was too restrictive. If the ALJ believed Dr. Leigh testified that Derengowski was limited to a RFC of "sedentary work," and Dr. Leigh also testified that Dr. Karri's RFC opinion was more "restrictive" than necessary, logic would dictate that Dr. Leigh believed Dr. Karri's RFC opinion was even more restrictive than "sedentary work." But the ALJ's reasoning indicates that he thought Dr. Karri's report was a basis to find that Dr. Leigh's RFC opinion of "sedentary work" was *too* restrictive, and that an RFC of "light work" was appropriate.

The Court cannot understand the ALJ's reasoning here. If anything, it appears that the ALJ may have mistakenly attributed Dr. Leigh's criticism of Dr. Karri's RFC opinion to Dr. Karri and then used that criticism to discount Dr. Leigh's testimony, which would be entirely mistaken and illogical. Whatever the ALJ's actual chain of thought, it is not clear at all why the ALJ found that Derengowski had a RFC of "light work" contrary to Dr. Leigh's testimony that Derengowski's RFC was "sedentary work." The ALJ's failure to provide any

6

reasoned explanation for his decision to reject the opinion of a medical expert demonstrates that the ALJ's decision was not supported by substantial evidence.

This is not an inconsequential failure. As Derengowski points out, once she turned 50 years old (which occurred before the ALJ issued his decision), "a limitation to sedentary work would direct a finding that [she] was 'disabled.'" *McCurrie v. Astrue*, 401 Fed. App'x 145, 148 n.3 (7th Cir. 2010) (citing 20 C.F.R. Pt. 404, Subpt. P, App'x 2, Rule 201.09); *see also Chihuahua v. Colvin*, 2016 WL 2897405, at *10 (N.D. Ill. May 18, 2016) ("The difference in the application of the grid is significant. For example, if the ALJ were to determine on remand that Plaintiff could perform work at the sedentary level rather than the light level and again rely on the grid to determine whether Plaintiff was disabled, Medical Vocational Rule 201.09 would result in a finding of disabled."). Therefore, the ALJ's decision must be remanded for reconsideration of Dr. Leigh's testimony and Dr. Karri's report as they are relevant to Derengowski's RFC.

### B.  Dr. Ellen Rozenfeld, Psy. D.

Dr. Ellen Rozenfeld, Psy. D., testified as a psychological expert at Derengowski's hearing. Like Dr. Leigh, Dr. Rozenfeld's testimony was based on a review of the records of Derengowski's medical examinations associated with her social security application process. Dr. Rozenfeld testified that Derengowki suffered from depression, and that this condition had worsened over the course of the application process. Dr. Rozenfeld testified that Derengowski's mental condition limited her functioning as follows:

> [S]he certainly is cognitively capable of understanding, remembering, simple and detailed instructions. However, with regards to sustainability, being able to pay attention and concentrate for extended periods of time, I do believe there would be a moderate limitation such that she would be limited to more tasks of a simple, routine nature. And this is based on the impact of the depressive symptomatology and her sustained attention and concentration. She just had feelings of low self worth, so when those feelings get generated in the work setting[,] [a]lthough she's cognitive and much more capable, I would limit her to more simple, routine tasks.
> With regards to social functioning, I would have her have only occasional contact with [the] general public in terms of having to handle extended communications, field a lot of questions, that kind of thing. But she certainly can handle contact. She can also handle occasional contact with coworkers and there's no indication to me that she cannot have supervisory contact. I don't see a limitation there.
> With regards to adaptability, . . . . I would limit her to only *occasional workplace changes*.

R. 6-3 at 90-91 (emphasis added). Without explanation, the ALJ gave this testimony only "limited weight." *Id.* at 32. The lack of explanation demonstrates that the ALJ's decision was not supported by substantial evidence.

Moreover, the ALJ's failure to appropriately account for Dr. Rozenfeld's testimony directly affected the ALJ's determination that Derengowski is not disabled. After taking testimony regarding Derengoski's RFC, a vocational expert testified regarding whether a substantial number of jobs exist in the national economy that can be performed by a person with Deregowski's RFC characteristics. But in posing hypothetical RFC characteristics to the vocational expert, the ALJ failed to highlight Dr. Rozenfeld's testimony that Derengowski should be limited to "only occasional workplace changes." As the Social Security Administration has

8

ruled, the ability "to deal with changes in a routine work setting" is one of the "basic mental demands" of "unskilled work." SSR 85-15, 1985 WL 56857, at *4 (Jan. 1 1985). "A substantial loss of ability to meet [this activity] would severely limit the potential occupational base," and "in turn, would justify a finding of disability." *Id.* Dr. Rozenfeld's testimony in this regard was highly relevant to the vocational expert's assessment of Derengowski's job prospects, and should not have been disregarded without legitimate justification. The ALJ provided none, so his decision must be remanded for consideration of this issue.

## II.    Credibility Determination

Lastly, the ALJ improperly found that Derengowski's testimony regarding her symptoms was "not entirely credible for the reasons explained in this decision." R. 6-3 at 29. The decision does not identify any inconsistencies in Derengowski's testimony. Rather, the decision merely recites the objective medical evidence. True, not all of the evidence fully supports Derengowski's testimony. But much of it certainly does. And neither of the medical experts testified that they thought the record evidence served as a basis to question the veracity of Derengowski's claims. The Court cannot say what the basis of the ALJ's credibility determination is. The only justification given, that her testimony was "not entirely credible," is a phrase the Seventh Circuit has "repeatedly derided as 'meaningless boilerplate.'" *Chase v. Astrue*, 458 Fed. App'x 553, 558 (7th Cir. 2012). Absent a "basis to review whether [the ALJ's] conclusion was supported by substantial evidence or to understand how his determination influenced his RFC assessment," the ALJ's credibility

9

determination must be rejected. *Eskew v. Astrue*, 462 Fed. App'x 613, 616 (7th Cir. 2011). Therefore, to the extent that such an assessment is necessary to determine whether Derengowski is disabled, Derengowski's credibility should be reassessed on remand.

## Conclusion

For the foregoing reasons, the Commissioner's decision is reversed and remanded for further proceedings consistent with this opinion.

ENTERED:

*Thomas M Durkin*
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: April 10, 2017